UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. C-11-02988 SLM (JCS) |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [Docket No. 16]** |
| v. | |
| RICHARD N. GRAY, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff United States brings a Motion for Summary Judgment ("Motion"), seeking to collect on an unpaid student loan issued to Defendant in 1985 to attend Heald Institute of Technology. A hearing on the Motion was held on February 17, 2012 at 9:30 a.m. The United States appeared at the hearing; Defendant did not. The United States filed additional materials in support of the Motion on April 12, 2012. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Motion is GRANTED.

## II. BACKGROUND

The United States filed the Complaint in this action on June 17, 2011 under 28 U.S.C. § 1345. In the Complaint, Plaintiff alleges that Defendant "owes plaintiff $2,699.32 plus additional interest according to the Certificate of Indebtedness." The Certificate of Indebtedness, apparently issued by the U.S. Department of Education, is attached to the Complaint.[1] Complaint, Ex. A. The Certificate of Indebtedness states, in part, as follows:

> On or about 08/06/85, the borrower executed promissory note(s) to secure loan(s) of $2,500.00 from Trans World Insurance Company. This loan was disbursed for $2,500.00 on 08/06/85, at 8.00 percent interest per annum.

---

[1] The United States did not provide a declaration authenticating the Certificate of Indebtedness.

*Id*. The Certificate of Indebtedness further states that Defendant defaulted on the loan on April 1, 1988, at which time the guaranty agency, Higher Education Assistance Foundation ("HEAF"), paid the lender $2,699.32, that is, the original principal amount of $2,500.00 plus the interest that had accrued up to the time of default, creating a new principal amount of $2,699.32.[2] In the complaint, the United States requested a judgment against Defendant for the new principal amount plus interest to the date of judgment, attorney's fees in the amount of 33.33% of the debt, and court costs.

The Defendant, proceeding *pro se*, filed an answer on July 7, 2011. Answer at 1. Defendant's Answer states:

> I don't owe any money. I never received the money. I resolved this matter previously. In 1993, I applied for a student loan and have paid off that loan in full. To qualify for that loan, I had to show proof that I never attended Heald, but the school received the money. So the school refunded the money to the loan company. Then I qualified for the new loan (that I paid) through the same program.

Answer at 1.

On September 27, 2011, the Court served Defendant with a Notice Regarding Summary Judgement Motions (the "Notice"). The Notice explains that "[o]nce the moving party meets its initial burden, the opposing party may not rest upon the allegations or denials of unverified pleadings, but must file an opposition setting forth specific facts showing there is a genuine issue for trial." Notice at 2 (citing Fed. R. Civ. P. 56 (e)). The Notice further explains that if the opposing party fails to "identify[] with reasonable particularity the evidence that precludes summary judgment . . . 'the moving party is entitled to judgment as a matter of law.'" Notice at 2 (citing *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986)). The Notice also warns that "[a] successful motion for summary judgment terminates the action without trial, and will result in a final judgment on the merits." Notice at 3.

On December 30, 2011, the United States filed the instant Motion. According to the United States, as of February 10, 2012, the date of the originally scheduled motion hearing, the total due on

---

[2] Pursuant to 34 C.F.R. § 682.410(b)(4), "[t]he guaranty agency shall capitalize any unpaid interest due the lender from the borrower at the time the agency pays a default claim to the lender."

1  the loan was $2,699.32 in principal plus $5,096.01 in interest for a total of $7,795.33, plus $0.59 per
2  day thereafter until judgment is entered.  Declaration of Rubio Canlas in Support of Plaintiff's
3  Motion for Summary Judgment ("Canlas Decl.") at 2-3, ¶ 5.

4  The United States submitted several loan documents in support of the Motion. *See* Canlas
5  Decl., Exhibits 1-5.  Exhibit 1 is a promissory note signed by Defendant on July 9, 1985 reflecting a
6  loan amount of $1,500.00.  *Id*., Exhibit 1.  The lender listed on the promissory note is Transworld
7  Insurance Company. *Id*.  Exhibit 2 is a HEAF Guaranteed Student Loan Application for $2,500.00,
8  also listing Transworld Insurance Company as the lender.  *Id*., Ex. 2.  The application lists the school
9  as the Heald Institute of Technology and carries a notation indicating that a loan in the amount of
10 $2,500.00 was disbursed on August 6, 1985.  *Id*.  The United States has not provided a promissory
11 note issued on August 6, 1985 in the amount of $2,500.00 but has submitted a print-out of what is
12 entitled "GSL Program Specific Screen."  *Id*., Ex. 3.  According to Mr. Canlas, this document shows
13 that a loan for $2,500.00 was disbursed to Defendant on August 6, 1985.  *Id*., ¶ 4.  Based on the
14 promissory note for $1,5000.00 and the additional documents described above, the United States
15 contends in the Motion that it has established the existence of the original loan (hereinafter, the
16 "Heald Loan") in the amount of $2,500.00.  Motion at 2.

17 The United States also addresses in the Motion the defense asserted by Defendant in his
18 Answer, namely, that Plaintiff did not attend Heald, that the Heald Loan was paid back by Heald,
19 and that Plaintiff had shown that he did not owe money on the Heald Loan in 1993, when he applied
20 for a subsequent student loan.  In particular, the United States points to a notation made in the
21 NSLDS database on April 17, 2000 stating as follows:

22 BORR SD ONLY ATTNDED SCHL FR 3 MNS SHD NT HV TO PAY ADV BORR THAT WAS HIS DECISION TO LVE SCHL AND STILL RESP FR LN BORR ASK TO SPK TO
23 SUPR TRNSFFR CL B STANSBERRY.

24 Canlas Decl.,  Exhibit 4 (Collector's Note Pad).  According to the United States, this shows that
25 Defendant did, in fact, attend Heald, contrary to Defendant's assertion to the contrary in his Answer.
26  Canlas Decl. at 3, ¶ 6, Motion at 6.

27 The United States implicitly concedes that Defendant received student loan in 1991 to attend
28 Wyotech (hereinafter, "Wyotech Loans"). *See* Canlas Decl., Ex. 5 (NSLDS print-out showing

3

Wyotech Loan). However, to the extent that Defendant would not have been eligible to receive the Wyotech Loans if he were in default on the Heald Loan, the United States suggests that Wyotech may have been mistaken in believing that Defendant was eligible for the loan, arguing as follows:

> In his answer to this complaint, defendant states that he, "had to show proof that I never attended Heald," at the time he applied for another student loan in 1993, in order to qualify for the 1993 loan. According to the National Student Loan Data System (NSLDS), after the defendant attended Heald, he applied for student loans at Wyotech in 1991, not 1993 . . . Notwithstanding the date, ED questions what proof was provided to Wyotech that the defendant never attended Heald? Whenever notified that there is incorrect information on an ED database that conflicts with a student's eligibility to receive Title IV Student Aid, ED researches the problem and if needed corrects the information on the ED database. In the defendant's case, sufficient proof needed by Wyotech to allow the defendant to receive additional Title IV Student Aid and attend school while having a defaulted loan from Heald on his record, would needed to have come from ED. ED records do not show that a letter or any communication was ever sent to Wyotech allowing for the defendant to attend school, while his loan with Heald was still in default. On the contrary, ED records . . .show that the defendant disputed the balance owed on his loan with Heald stating the he "only attended school for 3 Months"

Motion at 6. "Accordingly," the United States concludes, "the evidence is that defendant signed a promissory note to obtain a student loan to attend Heald, funds were disbursed, and defendant attended the school." *Id*.

At oral argument, the Court asked the United States to explain: 1) why it did not provide a promissory note showing the original loan amount of $2,500 but instead provided a promissory note for $1,500; and 2) why the Wyotech loans were disbursed in light of Defendant's alleged prior default. In response to the first question, counsel conceded that the promissory note provided to the Court was for less than the amount that was actually disbursed, and stated that there "may have been an additional promissory note that was unsigned" reflecting the $2,500 amount. The Court asked the United States to provide additional facts as to whether there was a second promissory note and what happened to it, as well as legal support for the contention that the Court should award the full $2,500.00 requested in the absence of a promissory reflecting that amount. The Court also asked for a supplemental declaration addressing why the Wyotech Loans are not sufficient to create a fact question as to whether the Heald Loan was paid off.

On April 12, 2012, the United States filed the Supplemental Declaration of Rubio Canlas in Support of Plaintiff's Motion for Summary Judgment ("Canlas Supp. Decl."). In that declaration,

4

Mr. Canlas explained that Wyotech "probably never knew about the defaulted Heald . . . loan" for the following reasons:

> The NSLDS . . . did not start operating until 1993 and credit reports were/are not required to originate a student loan because most student loan borrowers neither have nor are required to have credit. Furthermore, according toED's R107 screen . . . the Heald loan was not assigned to ED until 04/07/1993; therefore, when the debtor applied for his loans at Wyotech, his defaulted Heald loan was being held by a guaranty agency, not ED. Accordingly, Wyotech had no way of knowing if the debtor had any defaulted loans at the time of defendant's enrollment.

Canlas Supp. Decl., ¶ 4. In the supplemental declaration, the United States also provided a new calculation of damages based on an assumed disbursement amount of $1,500. *Id.* ¶ 3. The United States did not, however, provide any explanation of the discrepancy between the amount allegedly disbursed and the amount reflected in the promissory note filed with the Court. Nor did the United States address the related legal question, namely, whether the full amount of the loan should be awarded where no promissory note reflects that amount.

## III.   ANALYSIS

### A.   Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary " In determining whether to grant a motion for summary judgment, "the judge must view the evidence in the light most favorable to the nonmoving party: if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment may not be granted merely because a party has failed to submit an Opposition or supporting evidence in response to a motion for summary judgment. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). The Ninth Circuit has explained this rule as follows:

> Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment only upon a showing that there are no genuine issues of material fact requiring a trial. The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues.

*Id.* On the other hand, once the moving party has produced evidence demonstrating the absence of

5

1  triable issues, the burden shifts to the party opposing summary judgment to "identify with
2  reasonable particularity the evidence that precludes summary judgment." Fed. R. Civ. P. 56(e). If
3  the non-moving party fails to make this showing, the moving party is entitled to judgment as a
4  matter of law. *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986).

### B. Whether the United States has Made a Prima Facie Case

In an action to enforce a promissory note, the plaintiff must present evidence of: 1) the existence of the note; 2) the defendant's default, and 3) the amount due. "The burden then shifts to the defendant to prove that the amount due is not owing." *United States v. Chu*, No. 00-3450, 2001 WL 1382156, at *1 (N.D. Cal. Oct. 31, 2001) (citation omitted); *see also United States v. Freeman*, No. 01-1859, 2002 WL 467688, at *1 (N.D. Cal. Mar. 25, 2002) (citing *United States v. Irby,* 517 F.2d 1042, 1043 (5th Cir. 1975); *United States v. Glaude,* No. 99-0182, 1999 WL 1080680, at *1 (N.D. Cal. Nov. 12, 1999)). For example, in *United States v. Freeman*, the court held that "[P]laintiff has made out a prima facie case through submission of the signed promissory notes and certificates of indebtedness from the Department of Education." No. 01-1859, 2002 WL 467688, at *1 (N.D. Cal. Mar. 25, 2002). Similarly, in *United States v. Chu*, the court held that "Plaintiff has established a prima facie case by presenting evidence of the existence of the notes, defendant's default and the amount due on the notes." No. 00-3450, 2001 WL 1382156, at *1 (N.D. Cal. Oct. 31, 2001). In both *Freeman* and *Chu*, the court granted the plaintiff's motion for summary judgment because the defendant failed to identify specific evidencing rebutting plaintiff's prima facie case. The United States has cited no cases, however, in which a court has found that a prima facie case can be made on the basis of a promissory note reflecting an amount *less* than the amount allegedly due. Nor has the Court found any such authority. Therefore, the Court concludes that the United States has made a prima facie case only as to the amount reflected in the promissory note, that is $1,500.00.

### C. Whether the Defendant has Produced Evidence Rebutting Plaintiff's Prima Facie Case

Although Defendant has not filed an opposition brief or any evidence that he does not owe the United States the amount stated in the promissory note discussed above, he stated in his answer that the loan funds were paid back by Heald because he did not attend that school and further, that

Wyotech would not have issued student loans to him if his earlier loan was in default. As to the first assertion, these bare statements denying liability are not sufficient to create a fact question where Plaintiff has offered no evidence showing the loan funds were paid back to rebut the prima facie case made by the United States. Furthermore, in light of the supplemental declaration provided by the United States, the Court concludes that the issuance of the Wyotech Loans does not support an inference that the earlier loan was paid back. Rather, the United States presented undisputed evidence that Wyotech would not have been aware of the Heald Loan at the time the Wyotech Loans were issued. Therefore, Defendant has not rebutted the United States' prima facie case.

## IV.  CONCLUSION

For the foregoing reason, the Motion is GRANTED. Judgment shall be entered in favor of the United States in the amount of $4,699.95 in principal and interest to the date of this Order, which is based on an underlying loan amount of $1,500.

IT IS SO ORDERED.

Dated: May 10, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge